CHICAGO—FIRST DISTRICT—OCTOBER, 1924.    581

Grand Trunk Western Ry. Co. v. McKenna et al., 234 Ill. App. 581.

## Grand Trunk Western Railway Company, Appellee, v. Edward P. McKenna and John Rodgers, Copartners, trading as McKenna & Rodgers, Appellants.

### Gen. No. 28,845.

1. FORMER ADJUDICATION—*identity of proceedings before Interstate Commerce Commission and in State courts.* The parties to an action by a carrier against a shipper for demurrage charges were the same as those involved in a proceeding by the shipper before the Interstate Commerce Commission to defeat the same demurrage charges though the proceedings before the commission were brought against the Director General of Railroads who had complete control and possession of the railroads at the time.

2. FORMER ADJUDICATION—*effect of saving clause of Interstate Commerce Act as to remedies on conclusiveness of order of Interstate Commerce Commission in State courts.* The provision of the Interstate Commerce Act giving a remedy to shippers for damages before the Interstate Commerce Commission and providing that "the remedies now existing at common law or by statute" were not taken away but that the provisions of the act "are in addition to such remedies" does not mean that a shipper may successively submit a matter to the commission and to the courts, and where shippers invoked the jurisdiction of the commission, seeking to be relieved from the payment of demurrage charges, and the finding of the commission was against them, they cannot, in an action by the carrier for the same charges, set up the same matter in defense which they presented before the commission.

3. FORMER ADJUDICATION—*conclusiveness of order of Interstate Commerce Commission in State courts.* In an action by a carrier against shippers for demurrage charges defendants could not set up in defense damages sustained by them by reason of the failure of the carrier to furnish cars where, in a prior proceeding before the Interstate Commerce Commission, the liability of the carrier for failure to furnish cars in the same instances was passed upon and decided in favor of the carrier.

Appeal by defendants from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1923. Affirmed. Opinion filed October 30, 1924.

JEFFERY, CAMPBELL & CLARK, for appellants; JAMES CLARKE JEFFERY and STEPHEN A. CROSS, of counsel.

Grand Trunk Western Ry. Co. v. McKenna et al., 234 Ill. App. 581.

KRETZINGER, KRETZINGER & SMITH, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff Railway Company brought this action of the first class in the municipal court of Chicago to recover certain demurrage charges amounting to $1,698. On motion of the plaintiff the court struck the defendants' affidavit of merits, filed to the plaintiff's amended statement of claim, and denied the motion of defendants for leave to file an affidavit of claim for set-off. The defendants elected to stand by their affidavit of merits, whereupon, the court entered judgment for the plaintiff for the amount claimed. To reverse that judgment, the defendants have perfected this appeal, contending that the trial court erred in denying their motion for leave to file their claim for set-off and in striking their affidavit of merits.

By its amended affidavit of claim, the plaintiff alleged that it was a common carrier; that the defendants maintained a grain elevator at Wellsboro, in the State of Indiana, in the Chicago district, and that they had been notified of the arrival of certain cars of grain for unloading; that in accordance with defendants' directions, plaintiff placed certain cars on defendants' tracks for loading; and that certain loaded cars, upon arrival, could not be placed by plaintiff on defendants' tracks, because of the inability of the latter to receive them, and that defendants were notified of the arrival of these cars, and they were held by plaintiff, awaiting defendants' further orders and for unloading by them. The details as to all these cars were set out in an exhibit referred to as Exhibit A, attached to plaintiff's original statement of claim, and made a part of its amended statement of claim.

The plaintiff alleged that it had previously estab-

lished a certain schedule of demurrage charges, as required by law, by which demurrage was due it from the defendants on the various cars involved, as set forth specifically in said exhibit. These various items were alleged to have arisen during the year 1916, from April to October. It was further alleged that in 1918 these defendants, with certain others, had filed a complaint with the Interstate Commerce Commission, on which issues were joined, and a full hearing had, and a decision rendered on all the issues there raised; that the proceedings before the commission were between the same parties and involved the same subject matter, including the claims for demurrage and objections to the payment thereof as are involved in the case at bar; that in the proceedings before the commission, these defendants attacked the plaintiff's demurrage schedules and contended that the demurrage charges herein sued for resulted directly from the failure of the plaintiff to furnish defendants with sufficient cars for outbound shipments from their elevator, and that it was unjust, unreasonable and illegal to permit the plaintiff to take advantage of its alleged violations of law, in not furnishing the proper equipment, and claim demurrage because of defendants' failure to unload cars, and that in said proceedings before the commission, these defendants prayed that the plaintiff carrier be commanded to desist from its alleged violation of the law and that demurrage rules, adapted to the peculiar conditions alleged to involve defendants' elevator, be established, and it was further alleged that in said proceedings before the commission, these defendants expressly asked, as a part of the relief there sought, that the demurrage charges herein sued for be "waived."

The plaintiff alleged further, in its amended statement of claim, that, in the proceedings before the commission, all the issues involved were decided

584 APPELLATE COURTS OF ILLINOIS.

Grand Trunk Western Ry. Co. v. McKenna et al., 234 Ill. App. 581.

against the defendants in the case at bar,—the commission holding that said demurrage charges had been legally assessed, and that these defendants had not been shown to have been unduly prejudiced or otherwise injured; that, due to war conditions, this . plaintiff, together with other carriers involved in the proceedings before the commission, could not supply these defendants with the cars to the number desired; and that the failure to furnish cars could not be regarded as a reason why demurrage charges should not be assessed on the inbound cars. A copy of the opinion and order of the Interstate Commerce Commission, involved in the proceedings before that body, was appended to the plaintiff's amended statement of claim, as Exhibit B.

By their affidavit of merits to plaintiff's amended statement of claim (being the affidavit of merits stricken by the trial court) the defendants set forth that the plaintiff had not placed any empty cars to be loaded by defendants, which had not been loaded promptly, and that plaintiff had not tendered cars to defendants for loading on the dates as set forth in plaintiff's Exhibit A, attached to its statement of claim. The defendants further denied, in their affidavit of merits, that they had delayed the unloading of any of their cars and that demurrage to the extent of $1,698, or any other sum, had accrued as alleged by the plaintiff. For a further defense, the defendants alleged in their affidavit of merits that, owing to the failure of the plaintiff to furnish the defendants cars for loading of outbound grain from their elevator, it became impossible for the defendants to unload some of the incoming cars upon which demurrage is alleged to have accrued, and, therefore, the demurrage, or any part thereof, did not accrue to the plaintiff under its lawfully published tariffs.

The defendants alleged further in their affidavit of merits that the cause of action set forth in the plain-

Grand Trunk Western Ry. Co. v. McKenna et al., 234 Ill. App. 581.

tiff's statement of claim arose solely and entirely by
reason of plaintiff's violation of its legal duty, im-
posed by section 1 of the act to regulate commerce,
under and by which it was required to furnish defend-
ants cars upon reasonable request or demand; that by
reason of the failure of plaintiff to furnish defendants
with cars for loading outbound grain, within a reason-
able time after defendants' requests and demands
therefor, although plaintiff had in each case promised
to furnish said cars, defendants were unable to load
into their elevators the grain contained in the in-
bound cars, on which the demurrage claimed by the
plaintiff is alleged to have accrued; that the elevator
of defendants was of sufficient capacity to have ac-
commodated all the inbound grain, if plaintiff had
supplied cars for loading the outbound grain, as they
had been requested and as plaintiff had promised and
agreed to supply them.

Defendants alleged further that their elevator was
located on switch tracks and that they had no way of
placing cars at their elevator except through the
switching services of the plaintiff and that plaintiff
failed and refused to furnish proper switching service,
and, for that reason, certain of the cars referred to in
Exhibit A, attached to plaintiff's statement of claim,
were, necessarily, caused to stand on the switch track
of the plaintiff and could not be unloaded, and that
this was not occasioned by any fault or negligence on
the part of the defendants.

Defendants admitted that in September, 1918, they
had filed a complaint with the Interstate Commerce
Commission and that a hearing was had thereon, and
an opinion and order was made and entered deciding
said case, but the defendants denied, by their affidavit
of merits, that the issues involved in that proceeding
were the same as those involved in the case at bar, and
they denied that the plaintiff had correctly set forth,
in its statement of claim, the issues presented in the

proceedings before the commission or the finding thereon and they denied that the judgment and finding of the commission was *res adjudicata* as to the issues involved in the case at bar.

By their affidavit of claim for set-off, which the defendants asked leave to file, but which, on plaintiff's motion, the trial court denied them leave to file, the defendants set forth the alleged failure of the plaintiff to supply them with empty cars for loading their outbound grain, by reason whereof the defendants were unable to unload into their elevator, the grain arriving on inbound cars within the time allowed after arrival, and that a large part of the demurrage claimed by the plaintiff had accrued "wholly" because of said failure on the part of the plaintiff to furnish defendants with said cars for outbound shipments, and they alleged further that if the plaintiff had furnished them with cars as requested, no demurrage would have accrued on the inbound cars. And the defendants, by their affidavit or statement of claim for set-off, alleged that they had been damaged, by plaintiff's failure to furnish them cars for their outbound shipments, to the extent of the demurrage which plaintiff claimed had accrued on the inbound cars, and the defendants asked judgment for that amount.

The plaintiff having alleged in its amended statement of claim that the opinion and decision set forth in its so-called Exhibit B was the opinion and decision of the Interstate Commerce Commission in the proceedings instituted before that commission by the defendants in the case at bar, involving the demurrage charges here sued for, and the defendants having failed to deny in their amended affidavit of merits that such was the opinion and decision of the commission in those proceedings, it must be assumed that it was. Indeed, in the brief filed in this court in behalf of the defendants, it is expressly admitted that such is the

case.  It is further shown by the bill of exceptions filed herein that, on the hearing of the case at bar in the trial court; it was admitted by counsel for the defendants that "the cars, dates of detention and demurrage charges set forth in Plaintiff's Exhibit A" (being the charges here sued for), "were the same involved in the proceedings before and the opinion of the Interstate Commerce Commission, referred to in plaintiff's said amended statement of claim."

In the opinion of the Interstate Commerce Commission referred to, as it appears from the plaintiff's statement of claim, it is pointed out that it was alleged, in the proceedings there involved, that the demurrage charges against the defendants in the case at bar had accrued on inbound shipments of grain, which those defendants were unable to unload, because of congestion at their elevator, due to their inability to secure sufficient cars for outbound shipments or to obtain permission to reload unloaded inbound cars of western carriers for outbound movements to eastern destinations.  It was further pointed out that, in those proceedings, the defendants in the case at bar had attacked the plaintiff's demurrage rules as unjust, unreasonable and unduly prejudicial, asserting that the charges involved resulted directly from plaintiff's failure to furnish sufficient cars for the outbound shipments, although furnishing cars to other shippers for outbound movements of grain and other commodities. The commission further pointed out in the opinion in that proceeding that the defendants in the case at bar there asked "reparation in the amount of these demurrage charges, or the waiver thereof in those instances in which these charges have not been paid," and also the establishment of a demurrage rule for the future, adapted to the peculiar conditions surrounding the transportation of grain.

The opinion of the commission recited that the evidence there presented by the respective parties, as to

the number of cars ordered from the carrier and the number furnished, was conflicting, but that it had established the fact that efforts had been made to obtain more cars for eastern shipments and that the defendants (here) could have used more cars than had been furnished. The opinion further stated that the defendants in the case at bar, being the complainants in the proceedings before the commission, had there contended that the fundamental issue presented in the proceedings before the commission had been, "Was the carrier at fault in not furnishing cars for outbound loading?" The opinion of the commission then points out that, in the proceedings there involved, the carriers had shown the complete disarrangement in the transportation system of the country, existing at the period in question, as a consequence of the World War, and the various elements contributing to that disarrangement, and, that the proposed demurrage rules provided no means of determining when and under what circumstances a carrier was at fault in not promptly furnishing cars for outbound shipments. The opinion then set forth that while the shippers, who had instituted those proceedings before the commission, conceded that the demurrage charges there involved had been legally assessed, they attacked the lawfulness thereof, because of the duty imposed by law upon the carriers to furnish shippers with cars, upon reasonable request and further that the shippers there urged that, by contract, the carriers were obligated to furnish them with outbound cars, or relieve them from demurrage on their inbound cars. It was pointed out further in the opinion that the shippers (defendants here) had there urged further that, from the nature of their business as handlers of grain in transit, it was unreasonable to assess demurrage on inbound shipments which, through no fault of their own, could not be unloaded into their elevators, especially when that was due to their failure to obtain sufficient outbound cars.

The Interstate Commerce Commission then proceeded in their opinion to make the following rulings:

"The duty resting upon carriers to furnish cars to shippers upon reasonable request is not absolute. * * * 'The carrier is not liable, if its failure to furnish cars was the result of sudden and great demands which it had no reason to apprehend would be made and which it could not reasonably have been expected to meet in full.'

"Defendants (carriers—plaintiff here) have shown the sudden and great demands upon the eastern carriers brought about by the war; that these demands could not have been foretold or avoided; that as a result thereof there was an extraordinary congestion of cars in the east and a corresponding shortage of cars in other sections, from which it naturally followed that the * * * carriers could not supply complainants with cars to the number desired."

The commission then pointed out in their opinion that the shippers (defendants here) had there admitted that the demurrage charges there involved had legally accrued on their inbound shipments under the demurrage tariffs then in force, and the commission then held that "The failure of the defendants (carriers—plaintiff here) to furnish cars for the movement of other grain stored in the elevator cannot be regarded, under the circumstances of this case, as a reason why demurrage charges should not be assessed on the inbound shipments."

It will therefore be seen that the commission, in the proceedings referred to, as shown by its opinion there filed, disallowed the claims and contentions there made by the shippers. It held that, "To allow the assessing of demurrage on inbound shipments to depend upon the furnishing of cars for outbound movement, a separate transaction, would open the way to abuses not necessary in order to protect a shipper from unlawful acts of the carriers," and, further, that, "The failure of the defendants (carriers) to furnish cars for the movement of other grain stored

590        APPELLATE COURTS OF ILLINOIS.

Grand Trunk Western Ry. Co. v. McKenna et al., 234 Ill. App. 581.

in the elevator cannot be regarded, under the circumstances of this case, as a reason why demurrage charges should not be assessed on the inbound shipments.''

Concededly, the parties involved in the case at bar were also involved in the proceedings before the Interstate Commerce Commission, and on opposite sides. In our opinion, such is the case, although the shippers in the proceedings brought before the commission, including the defendants in the case at bar, brought those proceedings against the Director General of Railroads, who had complete control and possession of the railroads at the time, under the federal war legislation, instead of against the railroads themselves.

While it might be true, as the defendants here contend, that the cause of action involved in the proceedings before the commission was not the same as that presented in the case at bar, it is further true that the claim or demand sought to be raised by the defendants in the case at bar, as set forth in their affidavit of merits filed to the plaintiff's amended statement of claim, and which was also the basis of the defendants' affidavit of claim for set-off, which they sought to file, was litigated between the parties in the proceedings before the commission. By their affidavit of merits, which was stricken by the trial court, the defendants alleged that the cause of action set forth in the plaintiff's statement of claim arose solely and entirely by reason of plaintiff's failure to furnish defendants with cars, as requested and promised and as required by law, in which to ship their outbound grain. In the affidavit of claim for set-off, the defendants made the same contention, alleging that they had thereby been damaged to the extent of the demurrage charges accrued, and they asked for a judgment against the plaintiff to the extent of those charges. That was one of the precise questions raised by the defendants in the proceedings before the commission, in which the defendants here not only sought to have

the demurrage tariffs changed, but, as shown by the opinion rendered by the commission in those proceedings, also asked "reparation in the amount of these demurrage charges, or the waiver thereof in those instances in which these charges have not been paid."

It is a general rule of law that a matter which has been adjudicated by a court of competent jurisdiction is deemed to be finally and conclusively settled in any subsequent litigation in a court of concurrent jurisdiction between the same parties where the same question arises. *People v. Chicago, B. & Q. R. Co.*, 247 Ill. 340; *Chicago Title & Trust Co. v. National Storage Co.*, 260 Ill. 485.

Under the act to regulate commerce, the Interstate Commerce Commission is given full jurisdiction of the matter of the furnishing of cars and transportation service, including switching service, by carriers to shippers. The act requires carriers to furnish such equipment and service to shippers upon reasonable request and to establish reasonable regulations relating thereto, and to publish such regulations and provisions in duly filed tariffs and to charge shippers only in accordance with the established and duly published tariffs for the services so rendered. The act further provides that if any carrier does anything prohibited by the Act, or omits to do anything required by the act, such carrier shall be liable to anyone injured thereby for the full amount of damages sustained in consequence of such violation of the provisions of the act. It is further provided that anyone so claiming to be damaged may either make complaint to the commission, as provided in the act, or bring suit for damages in any district or circuit court of the United States of competent jurisdiction, but that both such remedies may not be pursued, but such person must elect which of the two methods of procedure will be pursued. It is also provided by the act that nothing therein contained shall alter or take away "the reme-

dies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies.''

But the provisions of the act last referred to cannot be taken to mean that a shipper claiming to have been damaged by a failure to furnish cars by the carrier or to furnish appropriate transportation service, may successively submit the matter to the commission and to the courts. When the defendants themselves invoked the jurisdiction of the commission, seeking to be relieved from the payment of the demurrage charges here sued for, they thereby elected to pursue the remedy afforded by the act, before the commission, which, under the act, had full jurisdiction to determine whether the plaintiff carrier had defaulted in any degree in the performance of its duties toward the defendants, and if so, whether the defendants had been damaged thereby and to what extent. The decision of the commission having been to the effect that the carrier had not defaulted in its obligations to these defendants, they are bound thereby and may not now litigate the same subject matter in this action. *Mills v. Lehigh Valley R. Co.*, 238 U. S. 473; *Waters v. Becker*, 175 Wis. 621. So long as the commission proceeds in accordance with the requirements of the Interstate Commerce Act, with a proper regard for its constitutional restrictions, its administrative orders, not calling for the payment of money, if made after due hearing and supported by evidence, are not subject to attack in the courts. They are final and the rights of the parties involved are determined thereby. *Manufacturers Ry. Co. v. United States*, 246 U. S. 457, 482, 483-489; *Interstate Commerce Commission v. Union Pac. R. Co.*, 222 U. S. 541. The commission having had complete jurisdiction to determine whether defendants had been damaged in this connection, we are further of the opinion that the defendants are precluded from urging here that they have been dam-

aged, or that they should not be required to pay these demurrage charges, for reasons not urged in the proceedings before the commission. Likewise, the defendants may not contend here that the charges here sued for had not accrued, the defendants having taken the position in the proceedings before the commission that they had accrued, and that they had been legally assessed, and having admitted in the trial court, in the case at bar, as shown by the record, that "the cars, dates of detention and demurrage charges set forth in the plaintiff's Exhibit A were the same involved in the proceedings before and the opinion of the Interstate Commerce Commission."

But the defendants contend that they have suffered damages in their business as the result of the failure of the plaintiff to furnish them cars for outbound shipments from their elevator and that they should not be precluded from recovering such damages in this suit, by an appropriate set-off or counterclaim, by reason of the decision of the Interstate Commerce Commission, even though the damage they thus claim happens to be just the amount of the demurrage charges which the plaintiff is seeking to recover. It seems quite clear that the damages which defendants seek to avail themselves of in this manner really consist in payment of the charges sued for, to be relieved from which defendants instituted their proceedings before the commission. In their affidavit of claim for set-off, they allege that they have been damaged in the amount of the demurrage charges sued for, or in whatever amount had actually accrued, "if any." All the issues as to the liability for those charges were determined by the commission in those proceedings and may not be litigated again here. However, even if it be assumed that the damages thus claimed to have been suffered by these defendants consisted in something other than liability to pay these demurrage charges, though just equal to those charges in amount, we come

to the same conclusion because even if defendants did sustain damages as a result of the failure of the plaintiff to furnish them cars for outbound shipments, it must be held, in view of the decision of the Interstate Commerce Commission, that plaintiff is not liable to pay those damages. The question of the obligation of carriers to furnish cars to shippers is a matter within the commission's jurisdiction. On that question the commission held, in the proceedings there instituted by these defendants and others, against this plaintiff and others, that "the duty resting upon carriers to furnish cars to shippers upon reasonable request is not absolute," quoting from *Pennsylvania R. Co. v. Puritan Coal Min. Co.*, 237 U. S. 121, where the court said that "the carrier is not liable if its failure to furnish cars was the result of sudden and great demands which it had no reason to apprehend would be made, and which it could not reasonably have been expected to meet in full." The commission then proceeded to hold that the carriers had there "shown the sudden and great demands upon the eastern carriers brought about by the war; that these demands could not have been foretold or avoided; that as a result thereof there was an extraordinary congestion of cars in the east and a corresponding shortage of cars in other sections from which it naturally followed that the defendant carriers could not supply complainants with cars to the number desired." The commission then held that the evidence submitted in connection with the proceedings there involved had failed to establish that the shippers (including these defendants) had been unduly prejudiced by any of the carriers (including this plaintiff) in the allotment of cars for outbound shipments. That being the decision of the commission in those proceedings, these defendants may not again litigate that question here. That decision conclusive-

ly established, as between these parties, that the failure of this plaintiff to furnish these defendants with cars for outbound shipments did not constitute any violation or breach of its duties as a carrier; that the reasons for such failure were such as to excuse the failure, the duty of the carrier not being an absolute one; and that the shippers had not been unduly prejudiced thereby. Those questions having been conclusively established by that decision, as between these parties, it follows, not only that the shippers may not be relieved from the payment of the demurrage charges here sued for, as the commission, by its decision, specifically held, but also that the carrier may not be considered or held to be liable for any damage the shippers may have suffered because of the carrier's failure to furnish cars as requested. *Louisville & N. R. Co. v. Ohio Valley Tie Co.*, 242 U. S. 288.

As already stated, the commission had full jurisdiction to determine all the matters sought to be raised by the defendants in the case at bar, in the proceedings instituted by them before the commission. Act to regulate commerce, secs. 8 and 9. The defendants exhausted their remedy when they filed their complaint with the commission and, although, as pointed out by the defendants, under section 22 of the same act, the jurisdiction of the state courts in these matters is not interfered with, since the defendants elected to pursue their remedy before the Interstate Commerce Commission, under the Federal Act, they may not now relitigate the same subject matter, in the state courts, with the same parties against whom they instituted their proceedings before the commission.

For the reasons stated, we are of the opinion that the trial court did not err in denying the motion of the defendants for leave to file their affidavit of claim for set-off, nor in allowing the motion of the plaintiff to strike the affidavit of merits which had been filed by the defendants to plaintiff's amended statement of

claim.   The judgment appealed from is, therefore, affirmed.

*Judgment affirmed.*

O'CONNOR, P. J., and TAYLOR, J., concur.