BOURN (GOODYEAR v.). See Case No. 5,561.

## Case No. 1,698.

### BOURNE v. ASHLEY.

District Court, D. Massachusetts. June, 1863.

WHALE FISHERY—PROPERTY RIGHTS IN WHALE—CUSTOM AND USAGE—SUFFICIENCY.

[1. A whale belongs to the ship from which the first iron is placed, though the actual kill-ing is by the crew of another vessel, or they take part therein.]

[2. By long usage, the first iron, whether attached to the boat or not, holds the whale.]

## Case No. 1,699.

### BOURNE et al. v. ASHLEY et al.

[1 Lowell, 27.][1]

District Court, D. Massachusetts. Sept. Term, 1865.

TROVER—MEASURE OF DAMAGES.

In a proceeding in the nature of trover for the conversion of a whale in the Okhotsk sea, the measure of damages is the value of the whale at the time of the conversion, which can be found by taking the value of the oil and bone at New Bedford, which was the ruling market of the country at the time, and was the home port of both vessels, less the expense of cutting in and boiling, freight and insurance; to the amount thus ascertained, interest at six per cent is to be added.

[Adhered to in Bartlett v. Budd, Case No. 1,075. Explained in The Ontario, Id. 10,543. Approved in Swift v. Brownell, Id. 13,695. Distinguished in Dyer v. National Steam Nav. Co., Id. 4,225. Cited in Guibert v. The George Bell, 3 Fed. 585.]

At law. Libel promoted by [Jonathan Bourne and others] the owners of the ship Washington, against [Abraham Ashley and others] the owners of the ship Endeavor, both of New Bedford, for the conversion of a whale in the Okhotsk sea, in July, 1858. The merits of the case had been decided by Judge Sprague in favor of the libellants [Case No. 1,698], and the only point remaining open was the measure of damages, which came up on the assessor's report. We are entitled to receive the highest value of the oil and bone at New Bedford, without any deductions. Our vessel was on the ground, and the men were ready to cut in and boil the whale, and were obliged to come home without a full catch. Taber v. Jenny [Case No. 13,720].

T. D. Eliot and T. M. Stetson, for libellants.

R. C. Pitman and R. A. Pierce, for respondents.

LOWELL, District Judge. I hold the measure of damages in trover to be the value of the goods at the time and place of the conversion. In some courts the plaintiff has been permitted to recover a higher price if the goods have risen before the time of trial. This rule has led to great difficulties, and those courts have been obliged to adopt a

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

good many artificial exceptions, such as that the suit must be brought within a reasonable time, &c. Romaine v. Van Allen, 26 N. Y. 309. The weight of authority is in favor of the other rule. Watt v. Potter [Case No. 17,291]; Pierce v. Benjamin, 14 Pick. 356; Pinkerton v. Manchester & L. R. Co., 42 N. H. 424; Sedg. Dam. 481; Coolidge v. Choate, 11 Metc. [Mass.] 79. And the value which governs is, of course, the market price in the case of articles which have a market price; though the wrong-doer cannot escape the payment of damages for the conversion of an article which is of value only to the owner, by showing the absence of a market for the article. Stickney v. Allen, 10 Gray, 352.

In this case, the respondents introduced the evidence of very respectable experts to show what they would be willing to give for whales in the Okhotsk sea. The assessor finds the average estimate to be one-third of the value of the oil and bone at New Bedford. But all this evidence merely goes to prove that there is no market price for whales at that place. It is undertaking to show the value of an article by the price which persons will give for it who do not want it; whereas market price presupposes the presence of persons who do want the article. There is no market price for whales anywhere, because they are never brought to market; nor is there any market for oil and bone in the Okhotsk sea. These facts do not deprive the libellants of the fair value of their whale, but only oblige us to arrive at it by other means than such conjectures. We must discover, as well as we may, the value of this article to a person who happened to want it, for the respondents have put themselves in that situation. This value must be the price of the oil and bone in some market, less the expense of making the oil and bone out of the whale and getting it to market. Some of the witnesses, indeed, when their attention was directed to the true point of inquiry, said that the oil and bone were worth in the Okhotsk sea all they were worth in New Bedford, less freight and insurance. See Coolidge v. Choate, 11 Metc. [Mass.] 79; Selkirk v. Cobb, 13 Gray, 313. The market of New Bedford, which the witnesses and the assessor adopted, is the controlling market of the country as well as the home port of both vessels, and furnishes the proper standard. The damages, then, will be the value at New Bedford of the oil and bone made, or which might have been made, from this whale, less the average necessary expenses of converting the whale into oil and bone, and freight, insurance, and other usual charges, with interest on the sum thus arrived at. It was strongly urged that most of those charges and expenses ought to be rejected, because they were not incurred by the libellants' request, and did them no good, since their men were ready to do the work, and their vessel was able to bring home the product. For this position, Taber v. Jenny [Case No. 13,720] is cited. I do not profess to understand that case fully; but the assessor's report and the arguments seem to assume that the oil and bone, actually brought home, ought to be paid for, and the only question was, what charges should be deducted, and this turned upon the fact that the libellants' vessel was unable to fill up her cargo, and, therefore, the labor and freight would have cost them nothing. The rule which I have taken, and which is the ordinary rule, was not argued. A rule which makes the damages depend on the arrival of the vessels, and on the good or ill fortune of their adventures after the time of the conversion, cannot be upheld. The action accrued immediately, and might have been maintained, though the respondents had never received the oil and bone at the home port, and though the libellants had got a better whale immediately after this was lost; and the measure of damages ought to be the same whenever and wherever the action is brought, and whether the libellants were skillful or otherwise, and fortunate or not, and whether the respondents were insured or uninsured. In short, it is unsafe to base the amount of the recovery, in a case of this kind, upon circumstances happening afterwards. It is upon these very grounds that the rule of time and place of conversion was adopted.

The report will be recommitted to the assessor to find the expense of cutting in and boiling, which is the only element of the computation not fully presented by him, unless the parties agree upon it. I see no reason for denying costs to the prevailing party. Ordered accordingly.