FRANK E. WALLINGFORD, Respondent, *v.* HARRY KAISER, as Sheriff of Erie County, Appellant.

1. CONVERSION — MEASURE OF DAMAGES — GENERAL RULE AND EXCEPTIONS THERETO. While it is the general rule, in actions for conversion and other actions of a similar character, that the value of the property at the place of conversion is the correct measure of damages, such rule is subject to important qualifications and exceptions, among which are: (1) Cases where there is no value for such or like property at the place of conversion, in which event resort is had to evidence of market value at the nearest place where there is a market, even though such market may be far distant from the place of conversion; (2) actions against common carriers, where the goods are lost, destroyed or damaged in transit, in which case the damages recoverable against the carrier are based on the market value at the point of destination.

2. SAME — SEIZURE OF PROPERTY, IN TRANSITU, BY SHERIFF ASSUMING TO ACT UNDER A WARRANT OF ATTACHMENT — OWNER ENTITLED TO MARKET VALUE OF PROPERTY AT PLACE OF DESTINATION, LESS EXPENSES. Where property, in the custody of a common carrier in course of transportation to a distant and profitable market, where it would certainly have arrived, is wrongfully seized, at an intermediate point, by a sheriff assuming to act under a warrant of attachment, such case is an exception to the general rule that the value of the property at the place of conversion is the owner's measure of damages; and, where in an action for such conversion, the plaintiff has distinctly alleged special damages, claimed to have been sustained by reason of his inability to sell his property in the distant market, and it appears that such property had been selected with special care with reference to the demand at that place, he is entitled to recover the value of the property at the place of destination, less the cost of carriage and the cost of effecting a sale in that market.

Lack of information, on the part of the defendant, as to the particular destination of the property is not available to him in mitigation, where the circumstances under which the property was taken constituted notice that it was destined for some place beyond the point of seizure.

*Wallingford* v. *Kaiser*, 118 App. Div. 918, affirmed.

(Submitted January 21, 1908; decided March 13, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 21, 1907, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. A. Dolson* and *Edwin L. Dolson* for appellant. The measure of damages adopted by the court was erroneous. (*Parmenter* v. *Fitzpatrick*, 135 N. Y. 190–196; *Fleischmann* v. *Samuel*, 18 App. Div. 97; *Morgan* v. *Gregg*, 46 Barb. 183; *Wehle* v. *Haviland*, 69 N. Y. 448; *Watkinson* v. *Laughton*, 8 Johns. 213; *Booth* v. *Spuyten Duyvil*, 60 N. Y. 486; 2 Greenl. on Ev. § 256; *Smith* v. *Condry*, 1 How. [U. S.] 28; *The Amiable Nancy*, 3 Wheat. 546; *La Amistad de Rues*, 5 Wheat. 385.)

*Irving W. Cole* for respondent. The measure of damages adopted by the court is correct. (*Farewell* v. *Price*, 30 Mo. 587; *Suydam* v. *Jenkins*, 3 Sandf. 614; 53 N. Y. 213; *Marshall* v. *N. Y. C. R. R. Co.*, 45 Barb. 502; *Holden* v. *N. Y. C. R. R. Co.*, 54 N. Y. 662; *The Joshua Baker*, 1 Abb. Admr. 218; *Gillingham* v. *Dempsey*, 12 S. & R. 183; *Lathers* v. *Wyman*, 76 Wis. 616; *Curry* v. *Catlin*, 12 Wash. 322; *Keller* v. *Paine*, 34 Hun, 167; *C. E. Bank* v. *Peabody*, 111 App. Div. 553; *Einstein* v. *Dunn*, 61 App. Div. 195.)

WILLARD BARTLETT, J.   The only question which we consider it necessary to discuss in passing upon this appeal relates to the measure of damages adopted by the trial court. The action was for the conversion of a number of horses which were seized by the defendant assuming to act under a warrant

of attachment issued to him as sheriff of Erie county, the animals having been taken from a railroad train at East Buffalo while in course of transportation from Chicago, Illinois, to Liverpool, England. The learned trial judge instructed the jury that if the plaintiff was entitled to recover at all he was entitled to recover the value of the horses in Liverpool, less the expense of transporting them and putting them on the market in Liverpool for sale and selling them. No exception was taken to this instruction; but counsel for the appellant had previously disputed the correctness of the rule thus laid down for ascertaining plaintiff's damages by objecting to a question as to the value of one of the horses in Liverpool at the time that it would have arrived there in due course of transportation and taking exception to the decision of the court in overruling that objection; the court having stated at the time that one objection to like questions was sufficient and that the defendant need not object to each like question.

In actions for conversion, and actions of a similar character, the general rule is that the value of the property at the place of conversion is the correct measure of damages. (2 Sedgwick on Damages [8th ed.], § 496; *Tiffany* v. *Lord*, 65 N. Y. 310; *Parmenter* v. *Fitzpatrick*, 135 N. Y. 190, 196; *Fleischmann* v. *Samuel*, 18 App. Div. 97; *Hamer* v. *Hathaway*, 33 Cal. 117.) But this rule is subject to important qualifications and exceptions. Among these may be mentioned (1) cases where there is no market value for such or like property at the place of conversion. In that event resort is had to evidence of market value at the nearest place where there is a market. (*Keller* v. *Paine*, 34 Hun, 167, 176.) This may be as far removed as San Francisco is from the Isthmus of Panama (*Harris* v. *Panama R. R. Co.*, 58 N. Y. 660) or half way around the earth. (*Bourne* v. *Ashley*, 1 Lowell, 27.) The case last cited was a libel in admiralty by the owners of one whaling ship against the owners of another, both vessels hailing from New Bedford, for the conversion of a whale in the Okhotsk Sea. There being no market price for whales at the place of conversion, the court held that the libelants were

entitled to the value of the oil and bone at New Bedford, which was the controlling market of the country as well as the home port of both the whalers, less the expense of taking the oil and bone out of the whale and getting it to such port. (2) A second class of cases, constituting an exception to the rule that the value of the converted article at the place of conversion is ordinarily the true measure of damages, are actions against common carriers, where the goods are lost, destroyed or damaged in transit, in which the damages recoverable against the carrier are based on the market value at the point of destination. (2 Sedgwick on Damages [8th ed.], § 844; Mayne on Damages, 285; *Sturgess* v. *Bissell*, 46 N. Y. 462; *Holden* v. *N. Y. C. R. R. Co.*, 54 N. Y. 662.)

So far as I have been able to ascertain, the precise question presented by this appeal does not appear to have been determined in this state; that is, whether where property in the custody of a common carrier in the course of transportation is converted by a stranger, the owner's right of recovery is limited to the market value at the place of conversion or nearest market, or may be measured by the market value at the place of destination, less the cost of conveyance thither and the selling expenses. That the latter is the only just rule was strongly suggested in *Suydam* v. *Jenkins* (3 Sandf. Superior Ct. 614, 622) by DUER, J., in the course of what was pronounced an "extremely able opinion" by RAPALLO, J., in *Baker* v. *Drake* (53 N. Y. 211, 224). Judge DUER said: "When the market price is justly assumed as the measure of value, there are numerous cases in which the addition of interest would fail to compensate the owner for his actual loss. It may be shown that had he retained the possession, he would have derived a larger profit from the use of the property than the interest upon its value; or that he had contracted to sell it to a solvent purchaser at an advance upon the market price; *or that when wrongfully taken or converted, it was in the course of transportation to a profitable market where it would certainly have arrived;* and in each of these cases the difference between the market value when the right

of action accrued, and the advance which the owner had he
retained possession, would have realized, ought plainly to be
allowed as compensatory damages, and as such be included in
the amount for which judgment is rendered."

The view of Judge DUER, as expressed in the passage which
I have emphasized by italics, was adopted by the Supreme
Court of Missouri in a well-considered case decided in 1860.
(*Farwell* v. *Price*, 30 Mo. 587.)   Referring to the rule as to
which some doubt then existed, but which is now well estab-
lished, that the measure of damages in the case of a conversion
by the common carrier is the market value at the point of
delivery, the court went on to say : "And where the wrong-
doer is a mere stranger, a trespasser, it is not easy to see upon
what ground he can insist that the value of the property at
the place where the conversion occurred shall be the measure
of damages to which the owner is entitled.   Such a rule would
in effect force the owner to dispose of his property in a mar-
ket not of his own selection, and one where perchance the
property might be valueless."   In that case the property con-
sisted of flour consigned from St. Louis to Boston, and was
converted *en route* by the forwarding agent at New Orleans.
" Going no further for illustration than the case under con-
sideration, we see, as a matter of fact, that the market value
of flour at New Orleans is not at all times the same as at
Boston, minus the cost of transporting it from one point to
the other, though doubtless any considerable disparity could not
long continue.   Scarcity of capital or other circumstances may
depress the price of an article in one market below its value
in another, after deducting the expense of removing the
article, though in the present condition of trade this could not
continue long.   But as the price of an article must mainly be
regulated by its value for home consumption, and must be so
altogether if there is no capital engaged in its removal to other
places, the price at the place of conversion would in most
instances prove an inadequate compensation for the loss
sustained by the owner."

This last proposition seems strictly correct as applied to the

proof in the case at bar, which showed that the horses taken from the railway train by the sheriff had been selected at great pains and with special care in reference to the demand in the Liverpool market.

As may be inferred from what has already been said, I think there is and ought to be an exception to the general rule in trover that the value of the property at the place of conversion is the owner's measure of damages, in the case of goods converted by a stranger at an intermediate point while in the course of transportation; and that where the property when wrongfully taken is on the way to a profitable market where it would certainly have arrived, the owner is entitled to recover the value of the goods at the place of destination, less the cost of carriage and the cost of effecting a sale in that market. The purpose of the law is to afford just and reasonable compensation to the injured party for the natural and proximate consequences of the wrongful act; and this can hardly otherwise be accomplished in such a case as that which we have presented for our consideration here. The special damage which the plaintiff claimed to have sustained by reason of his inability to sell the horses in Liverpool was distinctly alleged in the complaint; and the defendant's lack of information as to the particular destination of the animals is not available to him in mitigation. (See *Lathers* v. *Wyman*, 76 Wisc. 616.) The circumstances under which the horses were taken constituted notice that they were destined for some point beyond East Buffalo.

The appellant relies upon the cases of *Brizsee* v. *Maybee* (21 Wend. 144) and *Spicer* v. *Waters* (65 Barb. 227), but in neither of those cases was the property converted while in the course of transportation. The *Brizsee* case was an action of replevin for a quantity of saw logs which were replevied at the mills of the defendant in Niagara county. The defendant was allowed to prove what would have been the value of the stuff made from the logs in the Albany and Troy markets at the time when it would in the ordinary course of business have reached those cities. The old Supreme Court, per

COWEN, J., held that the ultimate value at Albany or Troy when in the ordinary course of business the boards would reach there, deducting the expense of manufacturing and the price of transportation, was a proper topic of inquiry, with a view of ascertaining the value of the saw logs at the place where they were replevied, but not for any other purpose. In the *Spicer* case there was a conversion of lumber in Lewis county and the trial judge charged the jury that if the lumber was to be taken thence to the Troy market and there to be held in the plaintiff's lumber yard, they were entitled to recover its market value in Troy, less the cost and risk of transportation. The General Term of the fifth district (MULLIN and MORGAN, JJ., BACON, J., dissenting) held that this charge was erroneous in view of the general rule that in an action for the conversion of personal property the measure of damages was the market value at the time and place of conversion, with interest up to the time of trial. The prevailing opinion shows that the court deemed the decision in *Brizsee* v. *Maybee* (*supra*) controlling on the question, although, as already suggested, that was not a case of the conversion of goods in transit.

I find nothing in the reasoning or decision of these cases in conflict with the conclusion that the present judgment should be affirmed, with costs.

VANN, J. (dissenting). When a sheriff is sued, as such, for an official act done in his own county, and damages are assessed against him for the conversion of a common kind of property, they should not be measured by the market price at a place three thousand miles away, but by the market price in the locality where the act of conversion took place. That is the general rule, and there is no occasion for an exception, for there was a home market and the defendant was not a common carrier. A public officer who makes a mistake in an effort to discharge an official duty and is required to pay damages in consequence, should not be compelled to visit foreign countries and import witnesses therefrom in order to

keep the damages within reasonable limits. No authority requires us to sanction proof of the market price at a remote place, on another continent, and it is against public policy to establish a rule that may call a sheriff far from the county and even the state where his official duties are to be performed. Evidence of the market price at no place outside of the state where the owner was deprived of his property should be allowed, and I regret that a rule is about to be laid down which will not only be inconvenient in practice, but will frequently lead to injustice. As the question is open in this state, why should we go abroad for a market price when we have one at home? If we can go to England we can go to Russia, China or Australia, and to points where local conditions may temporarily raise the price, and where tariff regulations may hamper investigation and complicate the question. In laying down a rule to govern our own citizens, the market price established by themselves should be sufficient to measure the value of property converted in this state. I apprehend that no other rule will be welcome to them or regarded by them as just or right. Simple rules are the best, and no exception should be made except to prevent injustice.

Even where the property is on the way to a better market, if the act is neither vindictive nor a violation of contract, future profits, although reasonably certain, should not be awarded when the owner could purchase similar property at the place of conversion and thus save prospective profits for himself and the defendant from serious loss. Under such circumstances the home market price and interest is enough without profits, cases against common carriers excepted, because the law is loath to allow them any excuse for non-delivery.

American horses, raised, purchased and converted in America, should be valued according to the American markets rather than the English, even if they are on their way to England when converted.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER and HISCOCK, JJ., concur with WILLARD BARTLETT, J.; VANN, J., reads dissenting opinion.

Judgment affirmed.