ROTH COAL Co. *v.* LOUISVILLE & N. R. Co.

(*Knoxville.*   September Term, 1919.)

1. **CARRIERS.** Market value at destination measure of damages for conversion.

Where property is converted by a common carrier to whom it has been intrusted for transportation, the measure of damages is the market value at the point of destination, less the cost of transportation.   (*Post, pp.* 54, 55.)

Case cited and approved:   Dean v. Vaccaro, 39 Tenn., 488;   Erie Dispatch v. Johnson & Guinee, 87 Tenn., 490;   Farwell v. Price, 30 Mo., 587;   Blackmer et al. v. Cleveland C. C. & St. L. R. R. Co., 101 Mo. App., 557;   Spring v. Haskell, 4 Allen (Mass.), 112;   Cooper v. Young, 22 Ga., 269;   McGregor & Co. v. Kilgore, 6 Ohio, 358;   Shaw v. S. C. R. Co., 5 Rich., 462;   Rathbone v. Neal, 4 La. Ann., 563;   Wallingford v. Kaiser, 191 N. Y., 392;   Downing et al. v. Outerbridge, 79 Fed., 931;   McCaull-Dinsmore Co. v. Chicago, M. St. P. R. R. Co. (D. C.), 252 Fed., 664.

2. **CARRIERS.** Damages for conversion of coal.

In an action by a coal company against a railroad for the conversion of carload lots of coal in transit, in the absence of anything to show that there was any wholesale market for coal in carload lots at destination at the time, the court of civil appeals was warranted in fixing the coal company's damages from the conversion at the  retail price of coal at destination, less the cost of transportation and marketing.   (*Post, pp.* 55, 56.)

3. **TROVER AND CONVERSION.** Direct testimony as to value not indispensable.

In an action for conversion, direct testimony as to value is not indispensable, if there is proof of the character, quality, and quantity of the injury from which the jury may properly estimate the loss or damage.   (*Post, pp.* 56, 57.)

Case cited and distinguished: Holden v. New York C. C. Ry. Co., 54 N. Y., 662.

4. **CARRIERS. Motive no defense for conversion of coal shipped.**

The motive which controlled a railroad in its conversion of a shipper's coal is no defense to it, though such motive may be shown, where exemplary damages are claimed in the shipper's action. (*Post, p* 57.)

---

### FROM KNOX.

---

Error to the Circuit Court of Knox County.—HON. VON A. HUFFAKER, Judge.

H. N. CATE, ATCHLEY & BIBB, for appellant.

JAS. G. JOHNSON, for appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This suit was originally instituted by the coal company to recover of the Railroad Company the value of two cars of coal, which it was alleged the railroad company had unlawfully converted to its own use.

The Roth Coal Company are coal dealers in Knoxville. The coal company purchased said coal at Bernstadt, Ky., where said coal was delivered to the railroad company, in September, 1917, to be transported to the coal company at Knoxville, Tenn. The railroad company converted said coal at Corbin, Ky., which town is in the vicinity of Bernstadt, Ky. This was during the coal strike, and the railroad converted said coal for use in firing its locomotives; confiscation being necessary in order to keep its trains in operation.

It is insisted by the coal company that the proper measure of damages is the market value of the coal at the point of destination, which is Knoxville, while the railroad insists that it is the market value at the place of conversion, which is Corbin, Ky.

Ordinarily the market value at the time and place of conversion is the rule; there is an exception, however, where the property is converted by a common carrier to whom it has been intrusted for transportation, in which case the rule, supported by the great weight of authority, is that the market value at the point of destination, less the cost of transportation, governs. *Dean* v. *Vaccaro*, 2 Head, 488, 75 Am. Dec., 744; *Erie Dispatch* v. *Johnson & Guinee*, 87 Tenn., 490, 11 S. W., 441; Hutchison on Carriers (3d Ed.), vol. 3, section 1374; Moore on Carriers, 398; Cyc. 2094, Sedgwick on Damages, (9th Ed.), section 844; *Farwell* v. *Price*, 30 Mo., 587; *Blackmer et al.* v. *Cleveland C. C. & St. L. R. R. Co.*, 101 Mo. App., 557, 73 S. W., 913; *Spring* v. *Haskell*, 4 Allen (Mass.), 112; *Cooper* v. *Young*, 22 Ga., 269, 68 Am. Dec., 502; *McGregor & Co.* v. *Kilgore*, 6 Ohio, 358, 27 Am. Dec., 261; *Shaw* v. *S. C. R. Co.*, 5 Rich., 462 (S. C.), 57 Am. Dec., 768; *Rathbone* v. *Neal.* 4 La. Ann., 563, 50 Am. Dec., 579; *Wallingford* v. *Kaiser*, 191 N. Y., 392, 84 N. E., 295, 15 L. R. A. (N. S.), 1126, 123 Am. St. Rep., 600; *Downing et al.* v. *Outerbridge*, 79 Fed., 931, 25 C. C. A., 244; *McCaull-Dinsmore Co.* v. *Chicago M. St. P. R. R. Co.* (*D. C.*), 252 Fed., 664.

We think, therefore, that the court of civil appeals was correct in following the rule just announced.

There was no evidence as to the wholesale market value of the coal in cars on track at Knoxville. It was

Roth Coal Co. v. Louisville & N. R. Co.

shown by the evidence that the retail price of coal in Knoxville was from $6 to $6.25, per ton, and that it cost the coal company $1.50 per ton to market said coal after its arrival in Knoxville. The cost of the coal per ton at Bernstadt, Ky., was $2.90 per ton, and the freight on same to Knoxville was 80 cents per ton, making the cost of the coal delivered in Knoxville $3.70 per ton, to which was to be added $1.50 per ton for marketing same, making a total of $5.20 per ton. The court averaged the evidence as to the retail price of coal in Knoxville, and found as a fact that same was $6.12½ per ton, leaving a net profit to the coal company of 92½ cents per ton.

The court of civil appeals allowed the coal company a recovery of $6.12½ per ton, less 80 cents per ton for freight, and less the further sum of $1.50 per ton for the cost of marketing the coal in Knoxville; also interest thereon from September 25, 1917, which was the date of the conversion.

The railroad company assigned this action of the court of civil appeals as error, and says that the coal company was not entitled to recover the retail price at Knoxville, less freight and cost of selling it, and insists that, if the measure of damages was the price of the coal at destination, it should have been the wholesale price in carload lots.

There is nothing in the record to show that there was any wholesale market for coal in carloads in Knoxville at the time. The circuit judge found as a fact that $1.50 per ton would put it on the market after its arrival, so that, in the absence of proof to the contrary, we think the court of civil appeals was warranted in fixing the

damages in the manner indicated, for, if the retail price was $6.12½ per ton, and the total cost of marketing it after its arrival in Knoxville was $1.50 per ton, then the court was justified in concluding that the wholesale price per ton was $6.12½ less $1.50, or $4.62½.

"Direct testimony as to value is not indispensable, if there is proof of the character, quality, and quantity of the injury from which the jury may properly estimate the loss or damage." Moore on Carriers, 402.

In the case under consideration the court of civil appeals followed the rule announced in *Hoden* v. *New York C. C. Ry. Co.,* 54 N. Y., 662, which is as follows:

"If the property in the course of transportation is converted at an intermediate point, the measure of damages is its value at the place of destination, less the costs of carrying and effecting a sale in that market."

This method exactly measures the damages sustained by the defendant in error in this case. In a case where the overhead expense of operating a retail business is not susceptible of computation, this rule might not be practical.

Counsel for the railroad company cite authorities to the effect that the retail price cannot be recovered. By examining those cases it will be seen that such a holding is based on the fact that the expense of putting the goods on the market is not taken into consideration. In the instant case, however, the circuit judge has found as a fact the exact expense that the defendant in error would have incurred in marketing its coal, which differentiates this case from the cases relied upon by the railroad company.

Roth Coal Co. v. Louisville & N. R. Co.

This holding certainly meets the equities of this case. As stated by counsel in their brief:

"To allow a carrier to convert the goods of its shipper because its business had become so prosperous that it could not supply its engines with coal in the ordinary way and allow the carrier to deprive the shipper of the legitimate profits of his business, and pay for the goods converted only the cost at the place of shipment does not appeal to either the reason or the conscience of the court."

If the railroad confiscates the property of the shipper, it should be willing to pay him the profit he would have earned had the railroad complied with its contract.

The motive which controlled the railroad in the conversion of the coal, is no defense, although it may be shown in a case where exemplary damages are claimed.

We find no error in the judgment of the court of civil appeals, and it is affirmed, with costs.