# Staunton.

## Eastern Coal and Export Corporation v. Norfolk and Western Railway Company.

### September 21, 1922.

1. Trover and Conversion—*Measure of Damages in General—Measure where Conversion is by Carrier.*—While the usual rule in cases of conversion of goods is that the measure of the recovery is their value at the time and place of conversion, the general rule when property is delivered to a carrier for transportation and is by the carrier converted, the measure of the recovery is the fair market value of the property at its destination, less the cost of transportation and expenses of sale there.

2. Carriers—*Conversion—Measure of Damages—Instructions—Case at Bar.*—In the instant case, an action by a shipper for the conversion of coal to its own use by a carrier, the court refused an instruction based upon a claim that the measure of recovery was the difference between the amount already paid by the defendant and the amount at which the plaintiff claimed to have already sold the coal.

   *Held:* No error, because it was inconsistent with another instruction, which was offered by the plaintiff at the same time and granted by the court, that the measure of the recovery was the market value of the coal at the agreed point of destination.

3. Carriers—*Conversion—Measure of Damages—Instructions—Case at Bar.*—In the instant case, an action by a shipper for the conversion of coal to its own use by a carrier, the court refused an instruction based upon a claim that the measure of recovery was the difference between the amount already paid by the defendant and the amount at which the plaintiff claimed to have already sold the coal.

   *Held:* No error, because there was no sufficient evidence of any enforceable contract for the sale of the confiscated coal, no evidence of any pecuniary loss to the plaintiff growing out of such alleged contract, nor of any demand of compliance therewith by the alleged purchaser, nor of any failure of the plaintiff to comply therewith.

4. Carriers—*Conversion—Measure of Damages—Instructions—Case at Bar.*—In the instant case, an action by a shipper for the conversion of coal to its own use by a carrier, the court refused an instruction based upon a claim that the measure of recovery was the difference between the amount already paid by the defendant and the amount at which the plaintiff claimed to have already sold the coal.

Syllabus.

*Held:* No error, because an instruction which was granted at the instance of the plaintiff sufficiently stated the proper rule as to the measure of damages.

5. Carriers—*Conversion of Coal· by Carrier to Its Own Use—Measure of Damages—Case at Bar.*—The instant case was an action by a coal company against a carrier for confiscation by the carrier of coal shipped by the company. Defendant admitted its liability and had paid the plaintiff at the rate of $6.00 per ton for the coal confiscated. Plaintiff, it appeared, was a member of a shipper's coal exchange. When a member of the exchange delivered coal· to the railway company for transportation, this fact was telegraphed to the exchange, and such shipper was credited with the quantity of coal thus in transit, and could withdraw from the pool an equivalent quantity of coal.

*Held:* That the fair market value of the coal at the point of destination, less the cost of transportation and marketing there, was the true measure of damages to be applied under the evidence in the instant case.

6. Carriers—*Conversion—Measure of Damages—Evidence as to Market Price.*—In the instant case, an action by a shipper against a carrier for conversion to its own use of coal shipped, the market for coal was in a chaotic condition, making it difficult to show the market value of coal at the point of destination. The testimony was conflicting as to this, but the verdict of the jury was sufficiently supported by evidence, introduced by the defendant, as to the price of coal at the point of destination at the time of the conversion, and therefore the verdict of the jury was controlling.

7. Words and Phrases—*Market Value.*—Fair market value is neither the highest nor the lowest possible price at which a commodity under exceptionable conditions may be sold, for neither a forced sale nor a compulsory purchase affords the true test of such value. Fair market value is the price which would be agreed upon at a given time between a willing seller and a willing buyer in consummating a voluntary transaction.

8. Appeal and Error—*Conflicting Evidence—Rule of Decision in Appellate Court.*—Where the question of fact involved is complicated by peculiar conditions, as well as by conflicting evidence, and the trial court has refused to set aside the verdict, the Supreme Court of Appeals must affirm the judgment of the trial court, except when the judgment is plainly wrong or without evidence to support it.

9. Appeal and Error—*Rule VIII of the Supreme Court of Appeals— Error Against Appellee or Defendant—Moot Cases.*—Rule VIII of the Supreme Court of Appeals (129 Va. vii) is designed for the correction of errors against the defendant in error, or appellee, when some affirmative relief is sought by way of reversal, modification, or correction of the judgment under review. Where the defendant in error has made no motion for a new trial, and seeks no relief in the appellate court, assignments of error by him under Rule VIII present moot questions, which will not be determined by the Supreme Court of Appeals.

Error to a judgment of the Corporation Court of the city of Roanoke, in a proceeding by motion for a judgment for damages. Judgment for plaintiff for part of the damages sought by it to which plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*S. S. P. Patteson* and *Poindexter, Poindexter & Hopwood,* for the plaintiff in error.

*S. K. Funkhouser, Waller R. Staples, Theodore W. Reath* and *F. M. Rivinus,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The Eastern Coal and Export Corporation, plaintiff, complains of the inadequacy of the damages awarded it against the Norfolk and Western Railway Company, defendant, upon a motion to recover for the value of 688.75 tons of coal in transit, confiscated by the defendant for its own use as fuel.

The defendant admitted its liability and paid the plaintiff $4,132.50, or at the rate of $6.00 per ton therefor. The plaintiff, claiming that this amount is grossly inadequate, sought in this proceeding to recover the additional sum of $7,209.42, or $10.50 per ton as the fair measure of the damages.

After a jury trial there was a verdict for $1,377.50, which is equal to $2.00 per ton, showing that the jury valued the coal in transit at $8.00 per ton. Judgment upon the verdict followed, and the plaintiff is here assigning numerous errors.

These additional and pertinent facts appear: The plaintiff was a member of the Lambert's Point Coal

Exchange, an association of large shippers of coal. For the convenience and advantage of all interested, as well as for the purpose of avoiding demurrage charges and of securing expedition in loading and dispatch in the clearing of vessels, there was a commingling of ownership at the Lambert's Point piers of the railway company. All coal belonging to members of the exchange was classified so that coal of the same quality was there pooled, and each shipper credited with the quantity of his coal contributed to such pool. When a member delivered coal to the railway company for transportation, this fact was telegraphed to the exchange and such shipper was promptly credited with the quantity of coal thus in transit, and could thereupon withdraw from the pool an equivalent quantity of coal and deliver it to a vessel for his customer. Even though such member had no coal then actually in the pool, he could, in anticipation of the arrival of his coal and for the performance of his contracts, withdraw from the pool the quantity of coal with which he then stood credited. For the coal here involved the plaintiff had received such a credit and could have withdrawn an equivalent quantity from the pool before it was confiscated by the defendant. The necessity to continue the operation of the railway is given by the company as the reason for such confiscation. This necessity was created because those under contract obligations to supply such fuel failed to do so; such failure being due to a labor strike at the mines which were the source of supply.

The case appears to have been tried and is presented here upon two different if not inconsistent theories— one that the plaintiff is entitled to recover damages equal to the amount which it claims would have been realized from an alleged sale of the coal at its desti-

nation, and the other that the fair market value of the
coal at Lambert's Point, its destination, is the proper
measure of the recovery. The evidence offered in
support of the plaintiff's claim tends to show that the
market value and the contract price substantially
correspond. The true measure of the recovery in
this case, then, is the question presented.

[1] While the usual rule in cases of conversion of
goods is that the measure of the recovery is their
value at the time and place of conversion, the general
rule when property is delivered to a carrier for trans-
portation and is by the carrier converted, the measure
of the recovery is the fair market value of the property
at its destination, less the cost of transportation and
expenses of sale there. *C. & O. Ry. Co.* v. *Stock*, 104
Va. 104, 51 S. E. 161.

The language of Knapp, circuit judge, in *Norfolk &
Western Railway Co.* v. *Fort Dearborn Coal & Export
Co.* (C. C. A.), 280 Fed. 266, is appropriate here:
"Plaintiff is of course entitled to be made whole, not
as against an improvident purchase or a falling market,
but for the actual loss it suffered by defendant's
appropriation of its coal. On the offers and avowals
of defendant it must be assumed, as plaintiff's president
testified, that the coal sued for, if it had not been
taken, would have gone into certain pools at Lambert's
Point; that plaintiff had no right of diversion 'to any
other place or purpose;' that after passing the scales
at Bluefield this coal in transit would have had prac-
tically the same status as though delivered at the
pools; that its identity would then have been lost and
plaintiff entitled merely to a credit in the designated
pools for the same number of tons of coal of correspond-
ing grade. This being so, it seems plain that plaintiff's
actual loss was the market value of the credit which

34

it would have received if its coal had not been confiscated; and that market value, presumably capable of ascertainment, measures the damages which plaintiff may rightfully recover. *Chicago, M. and St. P. Ry. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97. 40 Sup. Ct. 504, 64 L. Ed. 801."

The judgment in that case was reversed because it had been tried upon the erroneous theory that the true measure of the recovery was the price paid for the coal by the plaintiff instead of its fair market value when confiscated.

This is said in *Wallingford* v. *Kaiser*, 191 N. Y. 392, 395, 84 N. E. 295, 15 L. R. A. (N. S.) 1127, 123 Am. St. Rep. 602: "A second class of cases, constituting an exception to the rule that the value of the converted article at the place of conversion is ordinarily the true measure of damages, are actions against common carriers, where the goods are lost, destroyed or damaged in transit, in which the damages recoverable against the carrier are based on the market value at the point of destination. 2 Sedgwick on Damages, (8th ed.), sec. 844; Mayne on Damages, 285; *Sturgess* v. *Bissell*, 46 N. Y. 462; *Holden* v. *New York C. R. R. Co.*, 54 N. Y. 662."

In *Roth Coal Co.* v. *Louisville & Nashville R. Co.*, 142 Tenn. 52, 215 S. W. 404, there is this clear and succinct statement of the rule: "Ordinarily the market value at the time and place of conversion is the rule. There is an exception, however, where the property is converted by a common carrier with which it has been entrusted for transportation, in which case the rule supported by a great weight of authority is that the market value at the point of destination, less the costs of transportation, governs." The expense of the vendor in marketing at destination should also be deducted from the market value there.

[2-5] The plaintiff offered two instructions present-
ing alternative views. The court refused to grant an
instruction based upon the claim that the measure of
the recovery here is the difference between the amount
already paid by the defendant ($6.00 per ton) and the
amount at which the plaintiff claimed to have already
sold the coal. This action of the trial court can be
justified for several reasons: (a) Because it was in-
consistent with another instruction which was offered
by the plaintiff at the same time and granted by the
court, that the measure of the recovery is "the market
value of the coal at the agreed point of destination,
namely, Lambert's Point, Va., less any sum that may
have been paid on account," etc. (b) There was no
sufficient evidence of any enforceable contract for the
sale of the confiscated coal, no evidence of any pecu-
niary loss to the plaintiff growing out of such alleged
contract, nor of any demand of compliance therewith
by such alleged purchaser, nor of any failure of the
plaintiff to comply therewith. (c) Because the in-
struction which was granted at the instance of the
plaintiff sufficiently states the proper rule to be here
supplied. The fair market value at destination, less
the cost of transportation and marketing there, is the
true measure of damages to be applied under the
evidence in this case. The practical difficulty of its
application here arises out of the fact that at the time
of the confiscation there was an embargo on the trans-
portation of coal enforced by the Interstate Commerce
Commission, except for coal intended for transship-
ment at tidewater to New England or other coastwise
destinations, or to foreign countries. Special permits
were required even for such shipments. The coal
which was confiscated was moving under such a per-
mit, ostensibly for transshipment to Stockholm, Swe-

den, although the plaintiff previously had in the pool more than enough coal to fill this contract, and the vessel chartered to carry it had already been loaded and despatched.

[6] The market for coal was in a chaotic condition, making it difficult to show such market value. The testimony was conflicting as to this, so that the verdict of the jury is controlling. It is supported sufficiently by evidence introduced by the defendant showing that a very large number of other owners of coal which was also confiscated by the defendant at or near the same time voluntarily rendered their bill, therefor at $6.00 per ton and less, while for only a very small part of it, say thirteen per cent., the voluntary charge exceeded that price. Most significant is the fact that just before this controversy arose, that is on July 8, 1920, it became necessary to estimate the value of coal in pools at Hampton Roads (Lambert's Point), New York, Philadelphia and Baltimore, because of the necessity for terminating the affairs of the Tidewater Coal Exchange, which had ceased active operations April 30th preceding. For the adjustment of credits between its members, the coal then in these pools at tidewater terminals to their credit was estimated as worth around $10.00 per ton. Assuming that to be a fair market value of such coal at destination, and bearing in mind that if the coal here involved had been carried to destination it would have been subject to a freight charge of $2.00 per ton, the value assessed by the jury, $8.00 per ton, in transit, appears to be justified.

[7, 8] Fair market value is neither the highest nor the lowest possible price at which a commodity under exceptionable conditions may be sold, for neither a forced sale nor a compulsory purchase affords the true test of such value. Fair market value is the price

which would be agreed upon at a given time between a willing seller and a willing buyer in consummating a voluntary transaction. The question of fact here involved is complicated by peculiar conditions as well as by conflicting testimony. When this is true and the trial court has refused to set aside the verdict, we must do so, except when the judgment is "plainly wrong or without evidence to support it." Code, section 6363. Our conclusion, then, is to affirm the judgment.

Other interesting questions are discussed in the briefs, but as nothing is suggested which should change the result, it would be unprofitable further to pursue the discussion.

[9] It is also unnecessary to rule upon any of the cross errors assigned by the defendants under rule VIII. This rule, under which such assignments are here permitted, is designed for the correction of errors against the defendant in error (or appellee) when some affirmative relief is sought here by way of reversal, modification or correction of the judgment under review. As the defendant has made no motion for a new trial and seeks no relief here, therefore these assignments present moot questions, which, however interesting, are academic. *Singer Mfg. Co.* v. *Bryant,* 105 Va. 428, 54 S. E. 320.

*Affirmed.*