**MITSUBISHI SHOJI KAISHA, Limited, v. DAVIS, Director General of Railroads.**

(District Court, S. D. New York. December 4, 1922.)

1. Carriers ☞94(4)—When there was market price at time goods should have been delivered, special damages not recoverable.

Where there was market price for steel rails at destination at time they should have been delivered, shipper could not recover special damages from carrier whether suing on contract or for conversion, though it did not learn of conversion until later.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Courts** ⬭372(4)—**Question of damages recoverable from carrier for nondelivery is one of general law.**

On question of measure of damages recoverable from carrier for nondelivery of goods destined to Yokohama, Japan, decisions of New York state courts are not authoritative in the federal courts; the question being one of general law.

3. **Sales** ⬭418(12)—**Knowledge that buyer will resell does not authorize special damages.**

To recover special damages, it is not enough that the seller should merely know that the buyer will resell, whether the action sound in contract or in conversion.

4. **Railroads** ⬭5½, New, vol. 6A Key-No. Series—**Interest recoverable as part of damages from carrier under federal control.**

Damages recoverable from carrier under federal control for nondelivery of goods shipped may reasonably include interest.

At Law. Action by Mitsubishi Shoji Kaisha, Limited, against James C. Davis, Director General of Railroads, as Agent operating the Northern Pacific Railway Company under section 206, Transportation Act, 1920 (41 Stat. 461). On motion for judgment on the pleadings. Judgment for plaintiff.

Murray Corrington, of New York City, for plaintiff.

Theodore Kiendl and George M. Skinner, both of New York City, for defendant.

LEARNED HAND, District Judge. This case comes up on motion for judgment on the pleadings coupled with a stipulation admitting the answer. The motion would have been the same without the stipulation, except that there is now no reason to allow any further pleading or any trial. It presents only the question whether the plaintiff is entitled to its resale price in Yokohama or the market price at the same place. I ignore the first two points presented, because if the plaintiff is wrong on the third, they are without importance.

The facts stated in the pleadings are that before the bill of lading was issued by the initial carrier the plaintiff advised it "that it should provide necessary facilities and move said steel bars forward promptly so that they could be landed in Yokohama at the earliest practicable time in order to satisfy plaintiff's Japanese customers for or purchasers of said steel bars." It had been earlier alleged that plaintiff had in fact already resold the bar for the price sought to be recovered, but clearly the allegation quoted is not intended to assert that the plaintiff advised the initial carrier of this contract. It must be taken as it reads. The seventh article of the complaint alleges that in September, 1918, the resale price was the market price at Yokohama.

[1] The answer, while admitting this last allegation, alleges in defense in the third partial defense that on December 15, 1918, when the bars should have been delivered the market price was the amount which it concedes to be due. This the stipulation admits. It follows that there was at that time a market price in Yokohama.

With that admission the plaintiff must lose. I know of only one case where, when there is a local market place, the buyer is entitled to recov-

er special damages, whether in contract or conversion. Indeed, it could not be otherwise because the buyer by hypothesis has it in his power to cover his loss on the resale by buying and filling his order. It is true that in the seventh article of the complaint the plaintiff alleges that it "did not learn of the conversion of said steel bars by defendant until several weeks after December 15, 1918," but that is clearly no answer. It knew that the bars had not arrived, and that its contract of resale was due. Its duty was to buy and fill the order, and hold the defendant for the delay in delivery if the bars were delivered late; its damages would have been the difference in the market value of the bars between December 15th and the actual delivery date, and this would have been a complete restitution.

The single case apparently supporting the plaintiff is Medbury v. N. Y. & Erie R. R., 26 Barb. 564, decided in 1858 by a General Term of the New York Supreme Court. The point was considered briefly in one paragraph without citation and with deference is not to be regarded as law in this court. The plaintiff's chief reliance is Delafield v. Armsby, 131 App. Div. 572, 116 N. Y. Supp. 71, affirmed on opinion below in 199 N. Y. 518, 92 N. E. 1083; but there the case turned altogether upon the fact that the plaintiff could not fill its resale contracts with any equivalent salmon. It is entirely clear that without that fact the result would have been different. All that the case holds is that if the buyer cannot substitute, it is not necessary that he should have told the seller that he is buying to fill an existing contract, or indeed that there should be any such. France v. Gaudet, L. R. 6 Q. B. 199, was a case of the same character in this, that the buyer could not get any substitute champagne to fill his resale contract. The action was in trover, and the decision does indeed hold that when the buyer has no such opportunity, the value of the goods is their resale price. I question whether the case would be followed in the federal courts, but even so, it has no application here where there was a market price. Wallingford v. Kaiser, 191 N. Y. 392, 84 N. E. 295, 15 L. R. A. (N. S.) 1126, 123 Am. St. Rep. 600, had nothing to do with this situation, but decided only that the recovery in conversion should be the value of the goods at the place of delivery. The point need not be considered because the market value at the place of conversion was here the same as at the place of delivery.

[2, 3] I think it very doubtful in any event whether, if there had been no market price, the plaintiff could recover more than the value at the time of delivery. In such matters this court, while always treating the decisions of the New York courts with that deference to which they are in fact so well entitled, does not regard them as in any sense authoritative; the question being one of general law. Unquestionably when the cause sounds in contract the general rule is that to recover special damages the buyer must allege and prove that he advised the seller of an existing contract which he needed the goods to fill, and that it is not enough merely to show that the seller knew that the buyer intended them for resale. This was said in Setton v. Eberle-Albrecht Flour Co., 258 Fed. 905, 169 C. C. A. 625 (C. C. A. 8th), and was repeated in Champion Spark Plug Co. v. Automobile Sundries Co., 273

Fed. 74, 83 (C. C. A. 2d), though in each case the decision did not turn upon the doctrine. See, also, Holloway & Bro. v. White Shoe Co., 151 Fed. 216, 80 C. C. A. 568, 10 L. R. A. (N. S.) 704 (C. C. A. 7th). I can find no case other than Delafield v. Armsby Co., supra, of a departure from this rule, and it seems to me open to considerable abuse. In the case of manufactured goods it is rarely the case that a seller does not know that the buyer means to resell and will on the strength of his purchase make resale contracts. Much may perhaps be said for a rule which might make him generally responsible; but, on the other hand, it exposes him to losses dependent upon whatever profits the buyer may in the future make, and he can hardly be supposed to mean to accept the hazards of an exceptional bargain over which he has no control and on which no means of ascertaining his possible loss. Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171, though not the same on the facts, decides that in similar cases the seller is not responsible for the loss of the buyer due to his acting on the faith of the seller's performance although the seller had reasonable ground to anticipate that he would so act. There must be more than that to charge him with an assumption for losses resulting from his defeat of the buyer's expectations. In principle the case appears to me to control. The same notion also appears in Chapman v. Fargo, 223 N. Y. 32, 119 N. E. 76, L. R. A. 1918F, 1049, Ann. Cas. 1918E, 1054, though the case can probably stand along with Delafield v. Armsby, supra.

It is true that this action is in conversion, and the plaintiff supposes that the rule is different in such cases. France v. Gaudet, supra, bears him out, though it is not applicable to the facts at bar for reasons already given. It seems to me, however, quite impossible on principle to sustain a different rule of damages in the two cases. The underlying consideration in each is the reasonable consequences of the wrong done, and if the failure to deliver under a contract of sale is to be paid for by the value of the goods, there is no reason to adopt another rule for conversion. A mistaken delivery by a carrier is not a moral delinquency and should not in principle be visited with greater penalty than the refusal of a seller to perform. Special damages should be recoverable only in case he has the same notice at the outset which would fix him with loss if he delivered too late, or were sued in contract for nondelivery. The mere change in the form of action can in reason have no effect upon the loss of the plaintiff or the defendant's liability. Therefore I think I should hold, even if the pleadings showed that the steel bars had no market value in Yokohama, that the plaintiffs could not recover special damages.

[4] A final question is whether interest is recoverable against the Director General of Railways. This seems to me concluded by Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554, 564, 41 Sup. Ct. 593, 597 (65 L. Ed. 1087):

"Wherever the law permitted compensatory damages, they may be collected against the carrier while under federal control. Such damages may reasonably include interest and costs."

While it does not appear that judgment for interest was in fact en-- tered after the reversal, the court below must have done so, or disregarded this direction in the opinion. At worst I must not ignore this language, even though it be only a dictum.

Judgment for $3,153.64, with interest from November 27, 1918, and costs.