## MALLORY S. S. CO. v. MITCHELL.

(Circuit Court of Appeals, Second Circuit. May 7, 1923.)

No. 276.

1. **Trover and conversion** ⚙️45—Measure of damages value of property at time and place of conversion.

In an action for conversion, the general rule is that the value of the property at the time and place of conversion is the correct measure of damages, and in the absence of competent evidence of value at such place, or that there was no market or market value there which could have been proved, testimony as to market value elsewhere is inadmissible.

2. **Carriers** ⚙️94(4)—Plaintiff may not at his election prove value of goods at point of shipment, rather than place of conversion, as measure of damages.

Plaintiff in an action for conversion, after their arrival at destination, of goods shipped from New York to a foreign country, may not at his election prove the value of the goods in New York as a basis for measuring his damages.

3. **Trial** ⚙️311—Jury may not take judicial notice of general world conditions as basis for fixing value of a particular commodity in a foreign country.

In an action for conversion of a shipment of miscellaneous goods from New York to Roumania, after their arrival there, in the absence of evidence of their value there at the time of conversion, a charge which permitted the jury to find from "their general knowledge of world conditions" that the goods were then worth more in Roumania than when they were bought in New York *held* erroneous.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Samuel Mitchell against the Mallory Steamship Company. Judgment for plaintiff, and defendant brings error. Reversed.

Writ of error to a judgment of the District Court for the Southern District of New York for $73,375.85 in favor of plaintiff entered upon the verdict of a jury. The parties will be referred to as aligned below. The allegations of the complaint were framed so as to set forth a cause of action in favor of plaintiff's assignor for conversion of goods by defendant.

Defendant in 1919 dispatched its steamship Henry R. Mallory from New York to Constanza, Roumania, with a general cargo, among which were shipments on 13 bills of lading which were the subject-matter of this action. The invoices totaled $102,975.62. In the case of the shipments under 4 of the bills of lading, there was a valuation clause which is not in issue; plaintiff not having taken a writ of error in respect thereof. The shipments covered by the remaining bills of lading comprised a considerable

⚙️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

variety of goods; i. e., lard, biscuits, ointment, oil, hardware, cherries, candied apricots, canned pineapples, and canned peaches.

These shipments were made by the firm of George Mogenson in the name of Gallie Company, Inc., their freight broker and agent, and were intended for Leo Brill & Co., of Bucharest, Roumania. Constanza is a seaport for Bucharest. The goods were landed at Constanza by defendant's vessel about the middle of January 1920. The bills of lading were "order notify," and hence negotiable. They were indorsed in blank by Gallie Company and Mogenson, and with drafts annexed were delivered for value to one Emanuel Gross, who became the owner and holder thereof. The bills of lading with the drafts and invoices were sent for presentation to Banque Mamarosch Blank & Co. at Paris. The Banque declined to honor the drafts, and they with the original bills of lading were eventually returned to New York. The bills of lading were never tendered, with a demand for the goods, to defendant's agent Tozzi at Constanza.

Tozzi, without any communication with nor instruction from defendant, delivered to Brill the goods covered by the bills of lading, instead of holding the goods until bills of lading were tendered for delivery of the goods. All this was alleged to be to the damage of Gross, and he assigned his claim to plaintiff Mitchell, and hence this action.

Burlingham Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and Carl G. Stearns, both of New York City, of counsel), for plaintiff in error.

Jacob M. Leibner, of New York City (Samuel I. Frankenstein, of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). As the result of the error of Tozzi, its agent at Constanza, defendant was liable in conversion for damages. The assignments of error raise four principal points: (1) The rule as to ascertaining the value of the goods; (2) judicial notice; (3) the exclusion by the court below of a certain contract between Mogenson and Brill; and (4) lack of evidence to establish the contents of the cases of goods when delivered to defendant.

[1] First. The place of conversion and the place of destination of the goods having been the same, and no subsidiary question having arisen on the ground that those places were different, the proper measure of damages is the value at place of conversion. This long-established rule was recognized by the District Court. To this rule there are exceptions. Where the evidence shows that there was no market at the place of conversion, then the value of the goods elsewhere may be taken as the basis of recovery. The "elsewhere" varies with the circumstances, as is illustrated in many cases: Wallingford v. Kaiser, 191 N. Y. 392, 84 N. E. 295, 15 L. R. A. (N. S.) 1126, 123 Am. St. Rep. 600; Bourne v. Ashley, 1 Lowell, 27, 28, Fed. Cas. No. 1,699; The Protection, 102 Fed. 516, 42 C. C. A. 489; Arctic Bird (D. C.) 109 Fed. 167; Northern Commercial Co. v. Lindblom, 162 Fed. 250, 255, 89 C. C. A. 230; Whitehurst v. United States, 272 Fed. 46, 48; Harris v. Panama B. R. Co., 58 N. Y. 660; Glaspy v. Cabot, 135 Mass. 435, 441, 442; M., K. & T. Ry. Co. v. Allen, 39 Tex. Civ. App. 236, 87 S. W. 168. Analogously, in cases of breach of contract; Grand Tower Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71; Cahen v. Platt,

69 N. Y. 348, 352, 25 Am. Rep. 203; Mt. Vernon Brewing Co. v. Teschner, 108 Md. 158, 69 Atl. 702, 706–707, 16 L. R. A. (N. S.) 758.

Where, as in Delafield v. Armsby, 131 App. Div. 572, 116 N. Y. Supp. 71, affirmed on opinion below in 199 N. Y. 518, 92 N. E. 1083, there is a peculiar state of facts, the general rule on breach of contract is avoided and a special rule applied. The testimony fails to disclose any evidence (1) either of values at Constanza or elsewhere in Roumania, or (2) that there was no market or no market value for the goods at Constanza or elsewhere in Roumania. The sole witness as to values in Roumania produced by plaintiff was Dumont, a member of the Mogenson firm, who, so far as the record discloses, had not been in Roumania in 1920. Practically all of his testimony on this head should have been excluded as the merest hearsay. Dumont referred to unidentified trade papers, to vague information obtained from Brill through one Eichhorn, and to nondescribed "conversations" with one Lansing, and admitted that he had not received any reports from the Mogenson foreign offices "respecting trade conditions and trade prices in Roumania."

In brief, there was no testimony whatever to show values at Roumania, or that there was no market nor market value there, or that there was any justifiable reason for not taking depositions by commission. The action was commenced on July 29, 1920, nearly two years after the Armistice. The case was tried in November 1921. Apparently there was no difficulty in taking, in Constanza, the deposition of Tozzi which is in this record.

[2] Plaintiff, however, insists that the long-established rule is unsound, and that the rule is or should be that the measure of damage, at plaintiff's option, was market value in New York, the place of shipment, plus freight and insurance, but that, if he pleased, he could select as the measure of damages the market value at Constanza. We should dismiss this contention without comment, but for the earnestness with which it has been advanced. A merchant in Roumania might well believe that some commodity which he bought in New York at its market value there would sell for more in Roumania; but, by the time his goods arrived, there might be no demand, or a lessened demand, and in such event he would find that he had made a costly error of judgment. In the absence of some special circumstances or agreement, there is no presumption that the commodity shipped is worth as much at destination as at place of shipment.

We are not in accord with the view to the contrary, expressed in general language at pages 642, 643, in Rome Railroad Co. v. Sloan (decided in 1869) 39 Ga. 636, which is directly contrary to that tersely stated by Willard Bartlett, J., in Wallingford v. Kaiser, 191 N. Y. at page 394, 84 N. E. 295, (15 L. R. A. [N. S.] 1126, 123 Am. St. Rep. 600), as follows:

"In actions for conversion and actions of a similar character, the general rule is that the value of the property at the place of conversion is the correct measure of damages."

There being no legal evidence as to damages, the motion to dismiss the complaint should have been granted.

[3] Second. In view of the foregoing, there would be no occasion to refer to the court's charge but for certain expressions in respect of judicial notice, without which the case was barren of any evidence of value upon which the jury could predicate a verdict. The court said:

"While my judgment is not binding on you at all—it is simply my own opinion, and it is for you to say, because you are the sole judges of the fact— but looking at the whole situation of world conditions and everything else, the testimony in this case will go to show, in my judgment, that the value at the time that the goods ought to have been delivered over there in Roumania had advanced very considerably beyond what they were at the time when the goods were bought by Mogenson."

At the conclusion of the charge, counsel for defendant excepted to "that portion" of the charge "that the jury could take into account world conditions" and stated: "There is no evidence of the conditions in Roumania in this case." Thereupon the court said:

"Maybe there was no evidence of conditions in Roumania, but they may, nevertheless, take into account their general knowledge of world conditions, that everybody had at that time."

The line between the private knowledge of the judge or jury and judicial knowledge is not always easy to define. As said by Wigmore on Evidence (1905) vol. 4, § 2569:

"It is therefore plainly accepted that the judge is not to use from the bench, under the guise of judicial knowledge, that which he knows only as an individual observer. The former is in truth 'known' to him merely in the peculiar sense that it is known and notorious to all men, and the dilemma is only the result of using the term 'knowledge' in two senses. Where to draw the line between knowledge by notoriety and knowledge by personal observation may sometimes be difficult, but the principle is plain."

Again, when referring to judicial notice, the same author states (section 2570):

"But so far as the matter in question is one upon which men in general have a common fund of experience and knowledge, through data notoriously accepted by all, the analogy of judicial notice obtains to some extent, and the jury are allowed to resort to this information in making up their minds. * * * But the scope of this doctrine is narrow; it is strictly limited to a few matters of elemental experience in human nature, commercial affairs, and everyday life."

See, also, 15 Cyc. 924–926, and Chamberlayne's Modern Law of Evidence, 693 et seq.

This court has been disposed to be liberal, and not to close its eyes to facts of common knowledge, particularly in the territory where it exercises its jurisdiction. In re B. & R. Glove Corp. (C. C. A.) 279 Fed. 372, at page 380. But who can say, as matter of common knowledge, whether canned peaches at Constanza or elsewhere in Roumania in the winter of 1920, were worth as much or more or less there than in New York City, and so with lard and hardware and oil and the other articles.

In the latest edition of Encyclopædia Britannica, it is said that the production of petroleum in Roumania in 1914 was 1¾ millions tons, and this production put Roumania fourth in the list of the world's

oil fields. Can any one say, without proof, what the production of oil was in Roumania in January, 1920, and how the 222 cases of oil from Oil Products Company (one of the shipments in this case) compared in price with domestic Roumanian oil, and whether or not there was so little or so much oil of the same grade and quality in Roumania that the value of the 222 cases was greater or less at Constanza than it was in New York? These are all questions of fact, which must be proved, and cannot be left to a jury's speculation, so as to enable it to guess that the oil must be presumed to have had the same value in New York as in Constanza.

We venture the assertion that it would be difficult to find any domestic merchant, who through knowledge merely of "world conditions" could tell what his commodity is worth at the moment in Roumania. If our knowledge of conditions obtained from commercial cases in our own courts is any index, then the fact is that, while there may be general depression or general prosperity, some classes of goods advance and others recede under either condition for a multitude and often a complexity of reasons. To cast a defendant in damages upon the basis of a type of impression so elusive and so uncertain would be to carry judicial notice beyond all workable or just bounds.

We shall refer briefly to questions (3) and (4) supra, as they may arise in the event of a new trial.

Third. There was a contract (Defendant's Exhibit A for Identification) between Mogenson and Brill. The details need not be set forth, but defendant's contention is that the effect of this contract was to limit the rights which Gross could secure by advancing money against the drafts, particularly if he was advised as to the contract. The trial judge excluded testimony as to his knowledge of the contract. The ruling excluding the Mogenson-Brill contract and knowledge thereof by Gross was correct.

Fourth. The evidence was sufficient to justify the jury in concluding that the contents of the various cases of goods on delivery to defendant were as set forth in the bills of lading.

Judgment reversed.